First case this morning is 411-0993. People v. Ermakov. For the appellant, we have Steven Richards. For the appellant, we have Dr. Brooks. Thank you, Your Honor. Your Honor, this is the appeal from the denial of Yuri Ermakov's motion for leave to file a second post-conviction petition. The motion was presented to the trial court to judge Ford. He denied it, and this appeal followed. Now, to understand the basis for it, one has to go back a little bit to the trial and what were the major issues of the trial. First of all, Yuri Ermakov was accused of improper activities with a number of young women, but he was only convicted of one felony, which involved digital penetration of a woman known as S.G. Now, this was the critical allegation in the trial, and the critical allegation that he was convicted of. The other charge he was convicted of was a misdemeanor, which is relatively minor, and he was acquitted of the charges as the other girls. So, this issue was critical as to whether there was digital penetration. Now, at trial, it was even more critical because there were a number of facts. One is that the testimony of S.G. at the trial, as to digital penetration, was very confused as to the number of times, places, where it happened, and when it happened. So, that was going in, number one. Two, she was impeached because she gave an initial interview to the police, which both sides acknowledged was basically a lie because she was denying any relationship whatsoever. She then gave a second, recorded interview, in which she was questioned by Investigator Huffman, and the responses were recorded. In this interview, she was asked about penetration a number of times, and specifically denied penetration, despite being pressed on this point by Investigator Huffman. There was then a third interview, which was also introduced at trial, which was not recorded, and took place a day later. And that was the interview at which she said, for the first time, there was digital penetration. In other words, the first time she had told anyone that the key allegation against Mr. Ermakov was, in fact, true, or that it happened. Now, we have an affidavit from a person named Dakota Gates, who was the boyfriend of S.G.'s sister, at the time of the trial and before the trial, and was acquainted with S.G. and with a number of the other young women. What he gave an affidavit to us, eventually on March 31st of 2010, was that he had been told by these girls, including S.G., that they had been threatened with prosecution if they would not testify, or they would not give the police something to use against Yuri Ermakov. Now, the first question I think your honors need to address is, is this braiding material? And I think you need to distinguish between the reasoning of Judge Ford and the arguments advanced by the state. And, of course, the state can urge arguments not adopted or made by the court below. But it should be clear that the arguments are very different, extremely different. What was Judge Ford's argument? Well, there's three prongs of braiding material, as your honors are well aware. One is, it must be material which is either exculpatory or impeaching. It either establishes the, or tends to establish the defendant's innocence, or discredits a witness against the defendant. So that's part one. Second part, must be suppressed. Under the case law, that means not necessarily suppressed by the prosecution. It could be suppressed by the police, not known to the prosecution, and inadvertently suppressed by the prosecution, which is the case here. We have no proof or evidence that there's anything to the contrary. Third, it must be material in the sense of usual testimony of materiality or prejudice, something that's significant, that would have a major effect on the trial, significant to undermine confidence in the actual verdict. Now, of the three prongs of braiding, Judge Ford determined that only one had been met. He acknowledged that it was suppressed. He believed, however, that it was not exculpatory or impeaching. And he further, in a related argument, he believed that it was not prejudicial. Why? Well, basically, Judge Ford's point of view is, so what? He really didn't focus on SG, but all the girls. He said, everybody knew they were lying. They lied a lot. They lied because many of them initially denied that anything happened, and later said it was true. So, since everybody knows they're liars, what does it matter if there was one more reason or a reason for witnesses to lie? Because, after all, everybody knew they were liars. In a related argument, what he says is that, as to SG, the prosecutor would have wanted to introduce evidence she'd been threatened with prosecution by the police, because that might explain to the jury why she eventually came forward with this story. I believe these are kind of unique arguments. Generally speaking, I don't think anyone would believe that being threatened with prosecution is a fact which favors the prosecution. Usually, being threatened with prosecution, if one doesn't say certain things or tell a particular story or testify for the prosecution, is material which the defense loves to have. In fact, the defense can introduce and often does introduce evidence, for example, of pending cases, pending unrelated cases on which no promises have been made, but the thought is that the witness is under unspoken or subliminal pressure to favor the prosecution. The prosecution is charging them with something else. The same thing, for example, with an illegal alien. The idea is the person in that status has a motive to curry favor with the state. Now, what greater motive could there be to curry favor with the state than being threatened with prosecution? And, in fact, if you look at the specifics of the case and the specifics of the argument, this motive becomes even more salient, because, in fact, the defense did have no good answer as to why S.G. suddenly came forward with this story between the second and third interviews. All the defense could suggest, and they had no evidence to support this, was that S.G. between the second and third interviews somehow heard about the other girls, a fact which I think she would have known before the second interview, not between the second and the third, and therefore she was jealous, was mad at Ermakov, and decided, I'm not going to shield him anymore, I'm going to come forward with the whole story. That argument was weak to begin with. It was ridiculed by the prosecution, rightly so. But, had there been another motive to suggest that she had been threatened with prosecution, the whole complexion of the case would have changed on the key issue of whether S.G. was telling the truth about the penetration. And that is absolutely the key issue in the case. So, I don't believe that Judge Ford's arguments hold water in this respect. Judge Ford also does advert, although this is not brought up, by the fact that this evidence was hearsay or inadmissible. But as Judge Ford acknowledged in the Beeman case, which as it happened was a case, his own case, he was a trial judge in Beeman, and he was affirmed by this court two to one, and then eventually reversed by the Supreme Court, seven to zero. The court said that inadmissible evidence, if important enough, can be the basis for a post-conviction petition. In that case, it was something even much more inadmissible, polygraph evidence, which of course never comes into court, but would have suggested a new line of argument, inquiry, or attack to the defense. Here, a threat of prosecution much, much more closer to admissible and much more salient would have been important, would have changed the outcome. Now, let me move then to the arguments that the state makes, because they have not adopted Judge Ford's arguments. They make a different argument. Their argument is that the affidavit is not good enough because Dakota Gates did not know, and it's true that he did not know precisely when the threats were made. He just knew they were made at some point, and at some point prior to trial. I would suggest that this is not a good reason to deny leave to file, and that's all that's being asked for, leave to file the second post-conviction petition. Dakota Gates was not in a position to know exactly when they were made. He just reported what he had been told by the girls he spoke with. However, if you look, as the state has done in detail, at the details of the second as opposed to the third interview, a strong inference would arise that the threat was made between the second and the third interview. Because you remember during the second interview, there's an assurance by Huffman, or somehow it comes out of nowhere, that you're not going to be in trouble. Despite that, SG continues to deny penetration. And then, one day later, in an unrecorded interview, she changes. Now, the fact that this third interview is unrecorded is also important, because we cannot know precisely what was said, and it may well have been that the threat was made during the third interview, precisely at the point when SG changes her story from no penetration to penetration, thereby providing crucial evidence to convict Yuri Ermakov. The state also makes another argument, which I'm not sure I understand in full, but has to do with the fact that in her initial statements, she had provided enough for possibly criminal sexual abuse or aggravated criminal sexual abuse. Well, I'm not sure what that means. He wasn't charged with aggravated criminal sexual abuse. Maybe they could have gone on that theory and convicted him, maybe not. But I think Your Honor knows from common sense and experience that police officers are often interested in getting either what they think is the whole truth or more serious charges. And this is particularly what Investigator Huffman was interested in, because she kept asking during the second interview, reported again and again and again about penetration, with either getting denials or, in some cases, at the end, no response. Now, if you look at the actual tape of the second interview, the last no response is also accompanied by a negative shake of the head. That's how we interpret it, and Your Honor has to make your own interpretation. So, again, there's no question that the second interview is a series of denials of penetration. Now, as to cause, Ermakov did get this information from Dakota Gates, but Dakota Gates would not initially give an affidavit. He did not give an affidavit, and at some points couldn't be located. We have affidavits from investigators to that effect, until March 10th of 2010, when he gave an affidavit. Also, time was needed and time was used to attempt to see if we could get better than Dakota Gates from Investigator Huffman and the girls, all of whom refused to talk. So there was an objective factor, Dakota Gates' non-cooperation, which impeded the presentation of this case during the first post-conviction proceedings. Now, counsel says that we could have asked for discovery. However, I don't know of any authority for asking for discovery during the first stage of proceedings, and it never got to the second stage. So I think that argument is not well taken. In addition, if there is any problem with the facts, or Judge Ford could have ordered an evidentiary hearing on the issue of cause and prejudice. Courts have done that before, and we asked for it. Without saying anything, he denied it. So we went with the affidavits and what we had, and we think that was sufficient, as I said, to grant leave. Now, once leave is granted, there will be additional issues and possibly additional discovery. And whether we will make this claim is something that only the future holds. We don't know what the girls will say about it now. We don't know what Investigator Huffman will say. But it is our strong belief that it is a substantial claim which deserves to be heard in a case in which the entire case turns on the testimony of one witness and on a serious charge, the only felony charge of which Yuri Ermakov was convicted. Now, as to certain other points made by the prosecution, I think I can deal with them relatively quickly. One point that the... One point that... Well, I think I may have dealt pretty much with everything the prosecution has said. If there are... But I will go on to one further issue, because we did raise in the brief. You know, we have no... Judge Ford, both in the opinion in this instance and his opinion on the first post-conviction petition, advanced a number of ideas which raise concerns on our part. I mean, one was the idea that somehow Yuri Ermakov was benefiting from voluntarily returning and thereby learning of Dakota Gates. And somehow that if he had stayed around, he would have known of this earlier and he could have been litigated earlier. But, of course, there is nothing in the record that he knew Dakota Gates beforehand. He gave an affidavit saying he didn't know. There is further, he said in his affidavit, which is uncontradicted, that his attorneys tried to interview the girls and were above, except in one instance. And, therefore, the idea that somehow he's trying to revert justice by returning voluntarily, facing the music, and bringing forth a claim is, we think, not well taken. And we would ask that if there is a remand, it be given to a different judge, a judge other than Judge Ford. Thank you. Thank you. You will have rebuttal. Ms. Brooks? May I, excuse me, may I please the court and counsel? My name is Anastasia Brooks and I represent the people in this case. And what I'd like to do is start out by noting that the defendant does have the burden on all the issues that they're raising. That is, the claim that they had shown cause, failing to bring this claim, the Brady claim in their first post-conviction petition, the allegation that there's prejudice in the sense that they claim that there's materiality under Brady, and the allegation that there is judicial bias, and, therefore, the cause should be remanded for a different judge. Dealing with these three issues, the first I would like to talk about is the cause issue. Cause has to be external to the defense. And in the Pitts and Barger case, by itself, a Brady violation does not indicate a fundamental deficiency in the post-conviction proceeding. And in some cases, that would be the case if the defendant did not know of the Brady violation until after the first post-conviction proceedings were concluded. However, here the record does show that the defendant was aware of the factual basis for his alleged Brady claim and could have, in fact, brought it if he had sought to amend the post-conviction petition prior to his dismissal. But he didn't have the affidavit yet. Well, my notes, at least in my brief, and the citation of the record I had was record volume 2, C255. And if this is wrong, I'd have to retract it. But at least according to my reading of the brief, my brief said, and I cited the record, that before the petition was dismissed on October 25th, 2010, Dakota Gates signed an affidavit for defendant in a C255. I believe there was two affidavits. I'm not sure that the one that the defense refers to was in March 2011, which would have been after the conclusion of the first post-conviction proceedings. But even if Dakota Gates, it's only a hearsay affidavit, and even if he had refused to sign, the defendant could have still provided his own affidavit, which would just merely have added yet another layer of hearsay. Because if hearsay affidavits are not sufficient, then Dakota Gates' affidavit wouldn't have helped him anyway. If it doesn't matter that it's a hearsay affidavit, then the defendant simply could have just provided his own, said this is what Dakota Gates told me, that presumably his girlfriend, A.G., told him, that A.G. had learned from other girls that Huffman had told them, and that's the chain of hearsay. The defendant could have then said, well, I cannot get affidavits from A.G., and from Huffman, and from S.G., and the other girls, and from Dakota Gates. And that would satisfy his pleading standard under 122-2, which would be to explain why the other affidavits are not attached. As long as that explanation is given, the affidavits do not have to be attached in order to meet that pleading standard. So it is somewhat of a question whether it would have survived first stage review, but if it had, it's a non-frivolous claim supported under 122, but an explanation of why there are no affidavits attached other than the defendant's own, then it could have proceeded to a second stage review on his first post-conviction petition, including a Brady claim. And then there could have been cause for the counsel to request in the trial court's discretion that he be allowed discovery. Discovery could involve perhaps maybe taking a deposition of Huffman and asking her under oath whether or not she made these threats that are alleged in this new Dakota Gates affidavit. So that is a possibility for how this could have been resolved. However, the defendant's failure to do this in the first post-conviction is entirely his own making. It's not a cause external to the defense that would give him justification for proceeding as a successive post-conviction petition. So there was no fundamental deficiency in the post-conviction petition that was not of his own making external to the defense. So for that reason, the defendant has not met the burden under the cause of prejudice test, because it requires both cause and prejudice. Any one of these not shown would be enough to affirm the denial of leave to file successive. With respect to materiality, the defense sets forth the test, which is materiality under Brady sufficient to undermine confidence in the verdict, reasonable probability of a different verdict, that is. And the defense's primary claim, this is where the defense draws upon this idea that somehow the verdict could have differed had this evidence been known. And they cast it as this, evidence that S.G., quote, made the accusation of digital penetration only after she was threatened with prosecution. Well, they still don't have that, even with Dakota Gase's affidavit, because there's nothing to connect up their claim that Hoffman had made any threats to S.G. and to her, that particular person, between that one-day, maybe two-day span between the second and third interviews. And the reply they sort of retreat, say, well, it was certainly made before trial. Well, that doesn't help explain why S.G. changed her story from sort of like, what the defense casts as sort of like a series of adamant denials, and it's not really the case. If you were to be honest with a look at that recording, there is shaking of the head but no audible answer when it's finally put to her directly as to whether it's penetration. There's some remarks that was made in her vaginal area, the touching, and then she sort of says, well, no, not in, but outside. So she's sort of conflicting her own answers, and she's refusing to give a direct denial. And so it's quite obvious to the police officer, perhaps, if any inference is going to be made from this recording, is that the police officer knew by repeatedly returning to the topic of the penetration that perhaps this woman here was holding something back. And that's an understandable thing. She's 14 years old, now turned 15 maybe, dealing with a very sensitive topic. And it's something that maybe that S.G. thought was none of the police officer's business, what happened between her and Anne-Marie Hermacost. And so there are reasons why she would withhold that, other than this idea that somehow she was threatened to be charged as an accomplice. And it just begs the question, as an accomplice to what? What did S.G. do that would conceivably make her an accomplice to anything that the defendant did? And what the defendant says, well, she could have been charged with obstructing justice, for lying to the police, denying penetration, because she was trying to protect Uri from being prosecuted. But that's not making her an accomplice to anything Uri did. So we're sort of stuck with what Dakota Gates says about this threat, and she's not being involved in any of the alcohol or marijuana consumption that was going on after, with other girls, and only other girls, after she had already broken up with Uri Hermacost. So the theory that somehow she'd be, the theory that she would be impeached by this, and the state does adopt some of the trial court's claims here, because what the trial court is saying is, this type of impeachment would only really bolster the state's arguments. It's obvious from the very first interview that S.G. was lying to protect Uri. She gets the text message from A.G., her sister, the police know everything, there's no bothered lying. So she goes right back into the child advocacy center, and she says, I'd like to be truthful with you now. And she tells the police everything she was prepared to say at that point. Well, there's no use then protecting him anymore. But it's obvious that she was trying to protect Uri, she didn't want him to be incriminated based on anything she had to say, and reluctantly then started disclosing the nature of their relationship. So a relationship that wasn't appropriate, because it was a 14-year-old girl at the time, and a teacher at her school. So essentially, because her motive is to protect Uri Ermakov from prosecution, not a motive to lie, to protect herself from her own prosecution. So if she were coerced to testify against him, then it would merely further the argument that she's really trying to protect him, and in fact now coming forward to tell the truth, with the fact that the threat of prosecution would simply get her to overcome her reluctance to incriminate the defendant, or somebody she was trying to protect earlier. And so there is nothing here to connect up the allegation of threats of prosecution to specifically to SG between the time, the very short time between the second and third interviews, from when it changed from denials of penetration to a claim of penetration. And so for that reason, the defendant has not met the burden of showing prejudice. And so it is inconsistent from the trial theory, which is that SG became upset learning of the defendant's arrest, learning about rumors of the defendant's other involvement with other girls, and therefore decided to change her story for that reason. So really it can't have it both ways. What was her reason, and it seemed like the argument was better at trial, and now this is sort of like grasping at another straw. And so the third argument is the claim of judicial bias. And the standard is the basis of, when the defendant wants to rely on something the judge did at trial, the standard is deep-seated antagonism, such that it would make fair judgment impossible. And that's a very hard standard, because the courts recognize that judicial rulings almost never constitute a valid basis for moving a judge on the ungrounded bias. And here the erroneous finding claimed that somehow the defendant's absence from jurisdiction made it harder for him to obtain this information, which he found out only upon returning to the country. Really what happens here is the defense claim of bias is hinging on the argument, which is not really recognized by the trial judge, that because if he had been just simply sentenced to prison and sent to prison right away, he would not have actually had a chance to meet up with Dakota Gates anyway. So essentially he would not have been in any better situation absent his plight. That is a pretty decent argument, and it's maybe perhaps something that the judge didn't consider when saying that while the defendant really might not learn of this information because of his own fault in fleeing the jurisdiction, the fact that he could have perhaps not done any better in prison doesn't really mean that this judge harbored deep-seated antagonism and made fair judgment impossible. So for that reason, there is no basis shown by the defense for assigning this to a different judge should this case require a remand. But the state's primary arguments are that there is no cause of prejudice shown. The defendant has not met that burden, therefore this court should affirm and not send it back at all. So I thank this court for your attention, and I would entertain any questions. Seeing none, thank you, counsel. Rebuttal, please. Just a couple of points. First of all, on the thought that S.G. couldn't have been charged or was really not legally responsible, you have to remember that she is a 14 and then a 15-year-old girl, so her perception of her legal peril is not necessarily a lawyer's accurate perception of her legal peril. So therefore the argument that she was threatened with prosecution does make a good deal of sense. To think that she was consulting law books and looking up Wharton's rule or knowing that she couldn't be an accomplice is, I think, fallacious. And again, there is a possible charge of obstruction of justice because she admittedly lied to the police, lied twice by the prosecution's account. As to the argument now adopted by the prosecution that Judge Ford was right and the prosecution would have been chomping at the bit to introduce evidence that she had been threatened with prosecution, again, I think that is somewhat silly. Obviously, if a witness is threatened with prosecution, they may be telling the truth because they're threatened with prosecution, but it's equally possible and perhaps much more likely that the threat of prosecution induces them to tell a lie, give the police something they would use. We know from the tape something Investigator Huffman was very, very, very interested in. So the scenario that she gave this information only upon a threat is very extremely plausible and made much more plausible by her extraordinarily inconsistent, shifting, and weak testimony of trial as the time, dates, places, and circumstances of penetration. So, again, this is a matter which went to the heart of the trial. Now, as to Judge Ford's remarks, we disagree. I mean, both in the first opinion on the first post-conviction petition and the second post-conviction petition, he dwelt at length upon the plight. He concluded several points that because issues had not been raised on direct appeal, they were waived, which is not legally correct. He's entitled, like everyone else, to make legal mistakes, but the tenor of his remarks and the personal animus which we perceive in them, we believe is reason to assign the case upon remand to a different judge. Thank you. Counsel, how do you respond to the State's argument that the Brady claim should have been advanced in the first petition? Well, the rule is that it's an objective factor external to the defense which significantly impedes the presentation of the claim, and there are several objective factors. One was the objective factor that Dakota Gates would not give an affidavit. Counsel argues you should have just indicated that his affidavit was not available, and that would have got you past the first stage. Your Honor, I don't believe that that is the case. I mean, I think there is hearsay and then there's hearsay. This was an additional layer, and there are a number of cases involving defendants trying to get affidavits from prison. Fellow prison inmates were indicating that and the court's rejecting those as first-stage procedures. So I think if you look at the case law, as best the case had to be made, one, by getting Dakota Gates' affidavit, and two, by seeing if other affidavits could be gotten. Part of the burden was to, as counsel says, to indicate why there weren't affidavits from the girls or Investigator Huffman, and that took some time to do. Dakota Gates didn't give anything until a few days before the first post-conviction petition was denied, and there was another process of trying to locate him, get a more complete affidavit, as well as to do the remainder of the investigation. So those were all significant factors which impeded presentation during the first claim and why it was presented as a second post-conviction petition. Well, that makes it sound as if... I frankly don't understand that position. The first question to be answered is, was the Brady information available before the first post-conviction petition was dismissed? And the answer to that is yes. Well, it was available in terms of hearsay from Dakota Gates, but it wasn't available in terms of the girls or Investigator Huffman. I think the other point about it is, and this comes from Strickler v. Green, in which there was some argument that, after all, some discovery motions could have been made in the proceeding there. And the court said no, there would have not been a basis to get discovery proceedings, and we couldn't have gotten discovery during the first stage. So I think that there was a significant factor which impeded presentation in the first post-conviction petition. Well, do you somehow think that the affidavit couldn't have been specific in saying, this mope won't give me an affidavit, even though he told me these things, because he says he's awaiting prosecution, and he really doesn't want to be helping you, or your client, as opposed to the prosecution? I mean, I was a trial judge for a long time, and if I got an affidavit that said, I've got a limited period of time here, I filed my first post-conviction petition, then I meet up with this mope in jail, this is what he tells me, and in addition to that, it's difficult to get in contact with these other individuals who could confirm what he's saying, and then I have the opportunity to get an affidavit from him later, perhaps, but this is the assertion, and this is a critical piece of evidence, because it's so impeaching, or at least from my perspective it's impeaching, I don't think a trial judge would say, well, that's just, who cares about that? Well, I will say that we also tried to supplement the petition. With what? With the first affidavit we got, and Judge Ford rejected that, and said that we could file a motion for newly discovered evidence, or anything else we wish, and that is in the record, so I think given his indication, I think that we were entitled to think that, since newly discovered evidence wouldn't apply to this, and I think you can see why, that Judge Ford was giving us an indication that we were free to file a second post-conviction petition, which is what we did, and his statement to that effect is in the record. Thanks to both of you. The case is submitted, and the court stands in recess.